# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 22 2019, 8:51 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Katherine A. Harmon
Jared S. Sunday
Mallor Grodner LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Paul W. Barada, Jr.
Grant M. Reeves
Rushville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Christian Bulmer,<br>*Appellant-Respondent*,<br><br>v.<br><br>Sara L. Olson,<br>*Appellee-Plaintiff*. | August 22, 2019<br><br>Court of Appeals Case No.<br>19A-DR-223<br><br>Appeal from the Franklin Circuit Court<br><br>The Honorable Sally A. McLaughlin, Special Judge<br><br>Trial Court Cause No.<br>24C01-0511-DR-419 |

**Brown, Judge.**

[1] Christian Bulmer ("Father") appeals the trial court's January 17, 2019 order. Father raises two issues which we revise and restate as whether the trial court abused its discretion in modifying his parenting time and whether it erred in appointing a guardian. Sara L. Olson ("Mother") asserts that this case is not properly before us and should be dismissed. We dismiss.

## Facts and Procedural History

[2] On February 9, 2006, the court entered a decree of dissolution of marriage between Father and Mother and ordered that the parties have joint custody of C.B. and that Mother have physical custody subject to Father's right of reasonable visitation. The parties reunited and had two additional children, A.B., born on July 19, 2008, and W.B., born on March 3, 2010. In April 2014, the court entered an order granting Father custody of C.B., A.B., and W.B. with Mother entitled to visitation. In October 2016, the court entered an order awarding Mother full care, control, and custody of A.B. and W.B. and that "it may not be in [C.B.]'s best interest to modify her custody at this time." Appellant's Appendix Volume II at 72-73.

[3] On March 1, 2017, Mother filed a Petition for Change of Custody and Supervised Parenting Time. On March 6, 2017, Father filed a "Petition to Modify Custody and RTSC and Establish Arrearage" and a Petition for Guardian Ad Litem and Parenting Time Coordinator. *Id.* at 37 (capitalization omitted). On March 7, 2017, the prosecutor filed another Petition to Establish

Arrearage.[1]  On April 27, 2017, the court entered an Order to Establish Arrearage,[2] on May 3, 2017, Mother filed a petition requesting a hearing on the arrearage.  On May 30, 2017, the court appointed a guardian ad litem.  The court held hearings on August 8, 2018, September 14, 2018, and September 28, 2018.  On October 26, 2018, Father filed a Verified Petition to Modify Custody.[3]  On December 4, 2018, the court held a hearing.

[4]     On January 17, 2019, the court entered an eleven-page order which stated in part that, after the residence of Mother's current husband was set on fire, Father was charged with arson, burglary, and criminal mischief, and Father was convicted of felony Criminal Mischief in a plea negotiation.  The court observed that it had previously found that Father exhibited behaviors consistent with anti-social and narcissistic personality disorder which have resulted in serious mental trauma being inflicted upon the minor children.  It found that C.B. has progressing mental health issues including a suicide attempt and suicidal ideology and that she was in a residential facility in Tennessee where she had been receiving services since March 2018.  The court found that Father attempted to remove C.B. against medical advice and filed for an emergency hearing to have C.B. placed in an alternative facility which was denied after

---

[1] The record does not contain a copy of the March 2017 petitions.

[2] The chronological case summary contains an entry dated May 2, 2017, which states: "Order to Establish Arrearage.  Copy of the Order Sent to Hon Sally McLaughlin Also."  Appellant's Appendix Volume II at 39 (some capitalization omitted).  The entry indicates that the order was signed on April 27, 2017.  The record does not contain a copy of this order.

[3] The record does not contain a copy of the October 2018 petition.

hearing and that a clinician at the facility stated that Father's calls were excessive and abusive. The court found there is a history of domestic and emotional abuse in the relationship between Father and Mother, they continued to be unable to collaborate or work together for the best interests of the children, and she suffers from P.T.S.D. and mental health issues which appear to be exacerbated when she has to interact with Father. The court expressed concern over Father's manipulation as evidenced by his report to the guardian ad litem that Mother was convicted of neglect of the children and that her current husband was physically abusive and noted that neither allegation had been substantiated. The court's order concludes:

1. The Court finds it is in the best interest of A.B. and W.B. that [Mother] continue to be the custodial parent. The children have experienced overall stability in their current home situation, have adapted well to school, and have made significant progress in the home of [Mother]. The [Mother] is in treatment.

2. The Court finds that [Mother] shall continue with treatment. Father shall be re-assessed for treatment needs and at a minimum begin counseling to address current parenting skills and ability to promote healthy relationship[s] with all children and address issues of prior attempts to alienate children against [Mother]. The children, A.B. and W.B., shall resume counseling with Ms. Lawson to address any issues with [Mother's] mental health issues, separation from [Father], and to assist in re-establishing a positive relationship with [Father].

3. A.B. and W.B. shall begin sessions with [Father] and Ms. Lawson with [Father] communicating telephonically in the counseling until further order of the Court within the next

thirty (30) days occurring a minimum of once a month with [Father] having supervised telephone contact of fifteen (15) minutes with each child weekly to be supervised by a neutral party obtained through the Division of Family and Children or other resource in Lake County, Indiana where [Mother] resides. The GAL shall assist in finding a Parenting Coordinator to continue to review the progression of parenting time of [Father]. A Review Hearing on this issue will be held on March 29, 2019 at 2:30 p.m to be held [i]n the Dearborn County Superior Court II.

4. The Court finds that it is in the best interest of C.B. that [Father] no longer be the custodial parent and C.B. have a guardian appointed in Tennessee to oversee continued care in [the] residential facility and aftercare plan if C.B. is discharged prior to eighteenth (18th) birthday. C.B. has voiced a desire to reunite with [Mother] and is reportedly refusing to go to [Father's] home. The Court has concerns that C.B. returning to [Mother's] home after extensive placement in a residential facility will require coordination for mental health treatment and may be challenging given that [Mother] also has mental health issues and has not resided with C.B. for [an] extensive time period. The Court requests the GAL to provide information regarding this alternative and sets for further review hearing on custody of C.B. on March 29, 2010 at 3:00 pm to be held in the Dearborn Superior Court II. [Mother] and [Father] shall participate in counseling and contact with C.B. as approved by clinicians at the residential treatment facility. However, [Father] shall have no unsupervised contact with C.B. Supervision shall be by counselor or staff of current treatment facility until further order of the Court.

5. The Court finds that based on history of domestic violence in parent's relationship, [Father's] conviction for Felony Criminal Mischief in May, 2017; and children's behavior described as hysterical with children crying, rocking back and

forth, presenting behaviors not previously observed by [Mother] after last visit with [Father]; and impact on children which is documented by the counselor, Ms. Lawson, [Mother] is not in willful contempt for withholding parenting time. Further, the totality of the circumstances provide that it is in the best interest of the children that [Father] have only limited supervised parenting time to progress after [Father] is in active counseling participating in the best interest of the children with supervised contact. The Court will review at the next hearing an appointment of a Parenting Coordinator and if coordinator not available, a plan to review and progress [Father's] parenting time.

Appellant's Appendix Volume II at 58-66. On January 28, 2019, Father filed a notice of appeal.

## *Discussion*

[5] Mother argues that this case is not ripe for appeal and asserts that "it should be dismissed at least with respect to the guardianship issues raised, if not entirely until all issues are resolved as to all parties." Appellee's Brief at 13. Father's notice of appeal classifies the January 17, 2019 order as a final judgment and cites Ind. Appellate Rule 2(H). Ind. Appellate Rule 2(H) provides in part that "[a] judgment is a final judgment if . . . it disposes of all claims as to all parties . . . ."[4] In its January 17, 2019, the court: ordered the guardian ad litem to assist

---

[4] Ind. Appellate Rule 2(H) provides:

> A judgment is a final judgment if:
>     (1) it disposes of all claims as to all parties;
>     (2) the trial court in writing expressly determines under Trial Rule 54(B) or Trial Rule 56(C) that there is no just reason for delay and in writing expressly directs the entry of judgment (i) under Trial Rule 54(B) as to fewer than all the

in finding a parenting coordinator to continue to review the progression of Father's parenting time; requested the guardian ad litem to provide information regarding the option of Mother obtaining custody of C.B.; found that it would review an appointment of a parenting coordinator Father's parenting time at the next hearing; and scheduled a hearing on certain issues for March 29, 2019. While the order stated that the prosecutor, as intervenor, filed a motion to establish arrearage in March 2017, it did not reference the motion again or mention the April 27, 2017 Order to Establish Arrearage, and Father does not point to the record to demonstrate that the trial court addressed any arrearage. Because the court's order did not dispose of all issues as to all parties and the trial court did not direct entry of judgment under Trial Rule 54(B), the January 17, 2019 order was not a final judgment.

[6] Father is therefore appealing from an interlocutory order. Parties are permitted to appeal "as a matter of right" certain interlocutory orders.[5] The trial court's

---

claims or parties, or (ii) under Trial Rule 56(C) as to fewer than all the issues, claims or parties;

(3) it is deemed final under Trial Rule 60(C);

(4) it is a ruling on either a mandatory or permissive Motion to Correct Error which was timely filed under Trial Rule 59 or Criminal Rule 16; or

(5) it is otherwise deemed final by law.

[5] Ind. Appellate Rule 14(A) provides:

Appeals from the following interlocutory orders are taken as a matter of right by filing a Notice of Appeal with the Clerk within thirty (30) days after the notation of the interlocutory order in the Chronological Case Summary:

(1) For the payment of money;

(2) To compel the execution of any document;

(3) To compel the delivery or assignment of any securities, evidence of debt, documents or things in action;

(4) For the sale or delivery of the possession of real property;

order does not fall under any of these categories. Thus, Father was not entitled to appeal the order as a matter of right. An appeal may be taken from other interlocutory orders if the trial court certifies its order and this Court accepts jurisdiction over the appeal, Ind. Appellate Rule 14(B), or if an interlocutory appeal is provided by statute. Ind. Appellate Rule 14(D). There is no indication that Father sought certification from the trial court or permission from this Court to file a discretionary interlocutory appeal, and he has not stated a statutory right to appeal.

[7] For the foregoing reasons, we dismiss Father's appeal of the trial court's order.

[8] Dismissed.

May, J., and Mathias, J., concur.

---

(5) Granting or refusing to grant, dissolving, or refusing to dissolve a preliminary injunction;
(6) Appointing or refusing to appoint a receiver, or revoking or refusing to revoke the appointment of a receiver;
(7) For a writ of habeas corpus not otherwise authorized to be taken directly to the Supreme Court;
(8) Transferring or refusing to transfer a case under Trial Rule 75; and
(9) Issued by an Administrative Agency that by statute is expressly required to be appealed as a mandatory interlocutory appeal.